**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **NICHOLAS BEYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 1:21-cv-4428** |
| | ) | |
| **VILLAGE OF NILES, LUIS TIGERA,** | ) | |
| **JOSEPH ROMANO, JOSEPH PENZE,** | ) | |
| **HADLEY SKEFFINGTON-VOS,** | ) | |
| **GEORGE ALPOGIANIS, and ROBERT** | ) | |
| **ZIELINKSKI,** | ) | |
| | ) | |
| **Defendants.** | ) | **JURY DEMAND** |

## COMPLAINT

NOW COMES Plaintiff, NICHOLAS BEYER, by and through his attorney, Sam Sedaei of the LAW OFFICES OF GOLDMAN & EHRLICH, CHTD., and as his Complaint against Defendants, VILLAGE OF NILES, LUIS TIGERA, JOSEPH ROMANO, JOSEPH PENZE, HADLEY SKEFFINGTON-VOS, GEORGE ALPOGIANIS, and ROBERT ZIELINSKI, states as follows:

### JURISDICTION, VENUE, AND PARTIES

1.    This is an action for violations of Plaintiff's right to freedom of speech under the First Amendment to the United States Constitution, violation of Illinois Whistleblower Act, 740 Ill. Comp. Stat. § 174/1, *et seq.*, and assault under Illinois State Law.

2.    Plaintiff invokes the jurisdiction of this court pursuant to 42 U.S.C. §1983, 28 U.S.C. § 1331 and 28 U.S.C.A. § 1367.

3.    Venue is proper because Plaintiff resides within the Northern District of Illinois, and the acts giving rise to this action occurred within the Northern District of Illinois.

4.      Plaintiff NICHOLAS BEYER ("Beyer") is a resident of Illinois and was a commander for the Niles Police Department ("NPD") at all relevant times.

5.      Defendant VILLAGE OF NILES ("Village") is a municipal corporation organized under the laws of the state of Illinois.

6.      Defendant LUIS TIGERA ("Tigera") is a resident of Illinois and was an NPD Police Chief at all relevant times.

7.      Defendant JOSEPH ROMANO ("Romano") is a resident of Illinois and was an NPD Bureau Chief at all relevant times.

8.      Defendant JOSEPH PENZE ("Penze") is a resident of Illinois and was an NPD Deputy Police Chief at all relevant times.

9.      Defendant HADLEY SKEFFINGTON-VOS ("Skeffington-Vos") is a resident of Illinois and was a Village Manager for Village at all relevant times.

10.      Defendant GEORGE ALPOGIANIS ("Alpogianis") is a resident of Illinois and was the Mayor of Village at all times relevant to his actions towards Plaintiff.

11.      Defendant ROBERT ZIELINSKI ("Zielinksi") is a resident of Illinois and was an Accreditation Manager for Village at all relevant times.

## **BACKGROUND**

12.      At all relevant times, Plaintiff worked for NPD. He joined NPD on January 6, 1999. Throughout his employment, Beyer has received many awards and accolades.

13.      On or about February 28, 2021, multiple NPD patrol units were dispatched to a McDonald's restaurant to investigate a non-responsive person behind the wheel of a car in the drive-thru lane.

2

14.     Multiple officers arrived at the scene. Footage of officers viewed by Plaintiff at the scene of the incident showed an individual slumped forward over the seatbelt, and asleep. Plaintiff recognized the individual as an off-duty employee (henceforth referenced by his initials, "D.W.").

15.     After NPD Officer Roy Brines ("Brines") woke D.W. up, he and another NPD Officer, Anthony Panko ("Panko") who arrived shortly thereafter asked D.W. to produce his license. D.W. eventually produced his license.

16.     At this point, Panko went back to his vehicle to make a phone call. While on the phone, he walked towards Brines and NPD Officer Michael Dati ("Dati"), and turned off his body camera. Brines and Dati also turned off their body cameras around the same time. These officers manually turned their cameras back on approximately 5 minutes later.

17.     NPD Cmdr. Anthony Scipione ("Scipione") subsequently arrived at the scene and spoke with the NPD officers at the scene, and collected D.W.'s driver's license.

18.     Shortly thereafter, the responding officers left the scene, leaving Scipione, D.W., and NPD Officer Sergeant Timothy Naleway ("Naleway"). Naleway's body camera then captured Scipione and D.W. walk towards the trunk of D.W.'s car. D.W. then opened the trunk, and Scipione removed an item that appeared to be a weapon from D.W.'s trunk, and placed it in his jacket and waist area. Scipione and D.W. then walked towards Scipione's squad car, during which D.W. appeared to sway and stagger. Scipione then appeared to give the key to D.W.'s car to Naleway, at which point Naleway's video footage ended.

19.     On the morning of February 28, 2021, Plaintiff received a call from Zielinksi. He informed Plaintiff about the incident with D.W. the prior night, and the fact that Zielinski, D.W., and a third individual were at dinner and then a bar that night. Zielinski also told Plaintiff that he

had to drive the third individual home after the bar, but advised D.W. not to drive home and offered his house where D.W. could sleep, but D.W. decided to stay in the bar.

20.    Zielinski went on to relate during the February 28, 2021 call that D.W. did not know where his vehicle was, and trying to find out what happened the prior night. Zielinski also informed Plaintiff that Scipione had taken D.W.'s gun and car keys. During another phone call, Zielinski also asked Plaintiff to delete certain pictures of Zielinski and several other individuals (including D.W.) drinking that Zielinski had sent Plaintiff via text message the prior night. Plaintiff advised Zielinski that NPD will likely investigate the matter involving D.W.

21.    In or around middle of March, 2021, Brines—who is also a former subordinate of Plaintiff—and Plaintiff spoke, and Plaintiff warned Brines not to compromise his integrity by violating applicable rules governing body cameras.

22.    Plaintiff began to further investigate the body camera footage of the officers who responded to the February 28, 2021 incident. Plaintiff also learned from the Computer Aided Dispatch Logs ("CAD") that no police reports were completed regarding that incident, and there was no inventory record of a firearm or keys under the incident.

23.    Plaintiff also learned that sometime around mid-March, D.W. was sending intelligence e-mail as part of his duties, and therefore appeared to be working at his job. Zielinski informed Plaintiff that D.W.'s direct supervisor had spoken to him, and told him, "don't get sick again."

24.    Plaintiff became concerned that NPD was not conducting a meaningful investigation into the February 28, 2021 incident, or the conduct of the officers who appeared to violate NPD policy and state law by shutting off their body worn cameras.

25.     Until around March 30, 2021, Plaintiff was able to access and view the body cameras footage from the February 28, 2021 incident from the NPD server. Anticipating the possibility of malfeasance, Plaintiff began to capture portions of the video footage on his phone. On March 30, 2021, Plaintiff noticed that the body cameras footage was no longer available for viewing.

26.     On March 31, 2021, Plaintiff decided to report the matter. He had worked very hard to preserve and strengthen the integrity of NPD, leading it to achieve "tier 1 accreditation" through ILEAP (Illinois Law Enforcement Accreditation Program). Plaintiff became concerned that NPD had not changed their retention period for body camera footage from 30 days to 90 days, as required by Law Enforcement Officer-Worn Body Camera Act. In a previous e-mail from Romano, Plaintiff was assured that the retention period was 90 days per law.

27.     On March 31 and April 1, 2021, Plaintiff reported his concerns to Romano and Tigera. An individual from Human Resources and Skeffington-Vos were also included in those conversations. Plaintiff also provided documents and still images that he had gathered to these individuals.

28.     On April 2, 2021, Penze and Romano met with Plaintiff to discuss the February 28, 2021 incident. During this meeting, they sought the identity of the individual who had provided information to Plaintiff about the incident, and Plaintiff told Romano and Penze that he did not feel comfortable divulging his sources because of Penze's and Romano's close relationship with two employees involved in the incident. During this meeting, Penze made a veiled threat of termination against Plaintiff by telling him about a sergeant in Joliet who was, according to Penze, terminated for making a similar disclosure. Thereafter, Plaintiff was placed on administrative leave for refusing to divulge his sources.

29.     On April 4, 2021 and a number of subsequent dates, Plaintiff consulted with then-Niles Mayor Andrew Przybylo ("Przybylo") about the February 28, 2021 incident, and apparent retaliation targeting Plaintiff. Following this consultation, Plaintiff reached out to a number of media organizations—including CBS, WGN, Niles Journal & Topics, and Chicago Tribune—and provided them detailed information relating to the incident (including the video footage), and participated in interviews that were widely broadcast. Przybylo also spoke with the same media organizations about the incident.

30.     On April 5, 2021, Zielinski called plaintiff. During this call, Zielinski threatened to kill Plaintiff if he disclosed his identity to NPD.

31.     On or about April 6, 2021, Plaintiff was removed from the supervisor group e-mail thread. On or about April 12, 2021, he was replaced with an "acting" commander.

32.     On April 15, 2021, Plaintiff filed a complaint with the Cook County State Attorney's Office's Law Enforcement Accountability unit, and later received an intake phone call from Assistant State Attorney, as well as an Investigator to whom Plaintiff's case was assigned to discuss his complaint.

33.     On April 26, 2021, Przybylo issued a memorandum to Skeffington-Vos. In the memo, Przybylo expressed his belief that an investigation that NPD was conducting into Beyer was due to his attempt to blow the whistle regarding the February 28, 2021 incident. In the memorandum, Przybylo also ordered Skeffington-Vos to place Tigera on administrative leave until the State Attorney's Office finishes an investigation it was conducting.

34.     Przybylo's order notwithstanding, Skeffington-Vos refused to place Tigera on leave. In addition, she cut off Plaintiff's access to his Village e-mail access. Skeffington-Vos also concurred with Tigera to keep Plaintiff on administrative leave.

35.     On or about May 5, 2021, Alpogianis called for a purportedly "independent" legal review into Beyer by an outside law firm. However, the investigating law firm never interviewed Plaintiff, even after Plaintiff proactively attempted to contact them. On information and belief, Alpogianis, Skeffington-Vos and Tigera directed the investigating law firm not to speak with Plaintiff as part of the investigation.

36.     On June 4, 2021, Plaintiff was demoted to the rank of sergeant, while he was hospitalized and undergoing treatment for major depression.

37.     On July 6, 2021, Plaintiff resigned from his position.

## COUNT I – ILLINOIS WHISTLE BLOWER ACT
### (Against the Village of Niles)

38.     Plaintiff disclosed information to multiple government agencies, and a law enforcement agency, after he formed a reasonable cause to believe that the information disclosed a violation of a state or federal law, rule, or regulation.

39.     Village retaliated against Plaintiff by placing him on administrative leave, and initiating a number of bogus investigations against him that resulted in his constructive discharge.

40.     As a direct and proximate result of Defendant's violation of Plaintiff's rights, Plaintiff has suffered severe and substantial damages. Plaintiff seeks damages for lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses and reasonable attorney's fees, as well as compensatory damages for loss of reputation, humiliation, embarrassment, mental and emotional anguish and distress, in an amount to be determined by a jury and the Court.

**COUNT II – 42 U.S.C. §1983 AND**
**FIRST AMENDMENT TO THE U.S. CONSTITUTION**
**(Against Luis Tigera, Joseph Romano, Joseph Penze,**
**Hadley Skeffington-Voss, and George Alpogianis)**

41.     Plaintiff restates and incorporates ¶¶1-40 of Count I as ¶¶ 1-40 of Count II.

42.     Speech by Plaintiff about the February 28, 2021 incident and NPD's failure to properly investigate the incident constituted speech on a matter of public concern.

43.     The aforementioned speech is protected by the First Amendment to the U.S. Constitution.

44.     The named individual Defendants took adverse actions against Plaintiff in retaliation for his exercise of his First Amendment rights by placing him on administrative leave, initiating a number of bogus investigations against him that resulted in his constructive discharge, and engaging in other acts against him enumerated in this complaint.

45.     Individual Defendants knew, or should have known that their conduct would violate Plaintiff's First Amendment rights.

46.     Plaintiff's free speech right to raise and discuss the aforementioned issues outweighed any legitimate interest Defendants had to suppress his speech.

47.     As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has suffered severe and substantial damages. Plaintiff seeks damages for lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses and reasonable attorney's fees, as well as compensatory damages for loss of reputation, humiliation, embarrassment, mental and emotional anguish and distress, in an amount to be determined by a jury and the Court.

## COUNT III – ASSAULT
### (Against Zielinski)

48.      Plaintiff restates and incorporates ¶¶1-47 of Count II as ¶¶ 1-47 of Count III.

49.      Zielinski engaged in an intentional conduct and issued a threat of bodily harm against Plaintiff. The threat placed Plaintiff in a reasonable apprehension of receiving an imminent battery of the most severe form imaginable.

50.      As a direct and proximate result of Defendant's assault, Plaintiff has suffered severe and substantial damages, including but not limited to humiliation, embarrassment, and mental and emotional anguish and distress.

**WHEREFORE**, Plaintiff NICHOLAS BEYER requests that this court enter a judgment in his favor and against Defendants VILLAGE OF NILES, LUIS TIGERA, JOSEPH ROMANO, JOSEPH PENZE, HADLEY SKEFFINGTON-VOS, GEORGE ALPOGIANIS, and ROBERT ZIELINSKI, and that Plaintiff be awarded the following relief:

        a.      Reinstatement;

        b.      Twice the amount owed in back pay, plus pre-judgment interest, and any negative tax consequences resulting from an award of a lump-sum payment;

        c.      Front pay;

        d.      Attorney fees;

        e.      Compensatory damages; and

        f.      Such other relief as this court deems appropriate.

Signature to follow

Dated: August 19, 2021                    *Respectfully submitted,*

                                          */s/ Sam Sedaei*
                                          _____
                                          Sam Sedaei of the Law Offices of Goldman &
                                          Ehrlich, Chtd., as attorney for Plaintiff
                                          NICHOLAS BEYER

Sam Sedaei
Arthur R. Ehrlich
10 South LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 332-6733
Sam@GoldmanEhrlich.com
Arthur@GoldmanEhrlich.com