IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS BEYER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   21 C 4428 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| VILLAGE OF NILES, LUIS TIGERA, JOSEPH ROMANO, JOSEPH PENZE, HADLEY SKEFFINGTON-VOS, GEORGE ALPOGIANIS, and ROBERT ZIELINSKI | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Nicholas Beyer brings a three-count complaint against defendants the Village of Niles ("Niles"), Luis Tigera, Joseph Romano, Joseph Penze, Hadley Skeffington-Vos, George Alpogianis, and Robert Zielinski.[1]  Count I alleges a violation of the Illinois Whistle Blower Act against Niles, Count II alleges First Amendment retaliation under 42 U.S.C. § 1983 against defendants Tigera, Romano, Penze, Skeffington-Voss, Alpogianis, and Count III alleges assault against Zielinski.  Defendants have moved to dismiss (Doc. 18) all counts.  For the reasons stated below, defendants' motion is granted in part and denied in part.

## BACKGROUND[2]

Plaintiff worked for the Niles Police Department ("NPD") from January 6, 1999, through July 6, 2021.  At all relevant times, plaintiff was a commander for NPD.  Plaintiff alleges that on February 28, 2021, police units were dispatched to a local McDonald's to investigate a non-

---

[1] The court is unclear on the spelling of Robert Zielinski's last name.  The caption uses "Zelinkski," and the complaint and brief repeatedly use both "Zielinski" and "Zielinksi."
[2] All facts properly pleaded are accepted as true for purposes of the motion to dismiss.  See Bilek v. Fed. Ins. Co., 8 F.4th 581, 584 (7th Cir. 2021).

responsive person behind the wheel of a vehicle in the drive-thru. The individual (referred to in the complaint by his initials "D.W.") was an off-duty NPD employee. Officers on the scene woke up D.W. and took his drivers' license. According to plaintiff, most officers at the scene turned off their body cameras upon recognizing D.W. Officer Naleway's body camera remained on, and his body camera footage showed another officer, Anthony Scipione, and D.W. approach the trunk of D.W.'s car. D.W. opened the trunk, and Scipione appears to remove a weapon from the trunk and place it in his jacket. The footage shows D.W. and Scipione walking towards with Scipione's squad car, with D.W. swaying and staggering. Scipione, while on-duty, proceeded to drive D.W. forty miles home.

On the morning of February 28, 2021, Zielinski called plaintiff and described the incident with D.W. the prior night. Zielinski relayed that Zielinski, D.W., and a third individual were drinking at a bar that night. Zielinski told plaintiff that he advised D.W. not to drive home. D.W. ignored Zielinski's advice and stayed at the bar. During the phone call with plaintiff, Zielinski stated that Scipione had taken D.W.'s gun and car keys. At some point, Zielinski sent photos to plaintiff of himself, D.W., and some others drinking at the bar on the night in question. Zielinski eventually asked plaintiff to delete those photos.

Plaintiff took it upon himself to investigate the incident, including viewing the body camera footage of the officers who responded to the February 28, 2021, incident, and looking for reports. Plaintiff learned that no one filed a police report and there was no inventory record of a firearm and keys. Plaintiff also learned that D.W. continued to work as normal, despite the fact that D.W. had carried his weapon while being visibly intoxicated.

Plaintiff believed that NPD was not conducting a meaningful investigation into the February 28, 2021, incident with D.W. or the conduct of the officers who turned off their body cameras in violation of NPD policy and state law. Until March 30, 2021, plaintiff was able to access and view the body camera footage on the NPD server. Plaintiff claims to have anticipated malfeasance, so he captured portions of the body camera footage on his phone. After March 30, 2021, the body camera footage was no longer available for viewing on the NPD server. Plaintiff reported the missing body camera footage to NPD Bureau Chief Joseph Romano.

On March 31, 2021, plaintiff allegedly reported the February 28, 2021, incident. He alleges that he was concerned about the behavior of the officers and the deletion of the body camera footage, despite the 90-day retention period established by the Illinois Law Enforcement Officer-Worn Body Camera Act. 50 ILCS 706/10-1 et seq. Plaintiff voiced his concerns on March 31, 2021, to officers Tigera and Romano, as well as Skeffington-Voss, who worked in Human Resources.

On April 2, 2021, plaintiff met with Romano and Penze regarding plaintiff's report and concerns. Romano and Penze repeatedly asked plaintiff for his source. Plaintiff refused to provide Zielinski's name, and told Romano and Penze that he felt uncomfortable divulging his source given Romano and Penze's close relationship with the employees involved in the incident. According to plaintiff, Penze made a "veiled threat of termination" by telling plaintiff about a sergeant in Joliet who was terminated after making a similar disclosure. Defendants placed plaintiff on administrative leave, claiming the leave was warranted because plaintiff refused to divulge his source.

3

Plaintiff spoke with then-Niles Mayor Andre Przybylo about the February 28, 2021, incident. After speaking with the Mayor, plaintiff reached out to several media organizations, including CBS, WGN, and the Chicago Tribune. On April 5, 2021, Zielinski called plaintiff and threatened to kill plaintiff if he disclosed Zielinski's identity to NPD.

On April 6, 2021, plaintiff was removed from the supervisor email thread, and replaced by an "acting" commander on April 12, 2021. On April 15, 2021, plaintiff filed a complaint with the Cook County State Attorney's Office's Law Enforcement Accountability unit. Later that month, on April 26, 2021, Mayor Przybylo issued a memorandum to Skeffington-Voss, expressing his belief that NPD was retaliating against plaintiff for blowing the whistle on the February 28, 2021, incident, and ordering Skeffington-Voss to place Tigera on administrative leave until the State Attorney's Office completed its investigation. Skeffington-Voss defied the Mayor's order and did not place Tigera on administrative leave. At some point after that, Skeffington-Voss cut off plaintiff's access to his NPD email.

On May 5, 2021, the new Mayor of Niles, George Alpogianis, called for an independent review of Beyer by an outside law firm. Plaintiff alleges that the investigation was "bogus," and that Alpogianis, Skeffington-Voss, and Tigera directed the investigating law firm not to speak with plaintiff, thus interfering with the integrity of the investigation. One month later, on June 4, 2021, plaintiff was demoted to the rank of sergeant. Plaintiff claims that he was constructively discharged, and chose to resign on July 6, 2021.

On August 19, 2021, plaintiff filed the instant complaint alleging violations of the Illinois Whistleblower Act, First Amendment retaliation, and assault against Zielinski.

**DISCUSSION**

To survive a motion to dismiss pursuant to Ryle 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 885 (7th Cir. 2012) (citing Iqbal, 556 U.S. at 678)

Defendants move to dismiss all counts, claiming that plaintiff has failed to allege an adverse employment action, failed to allege individual responsibility, and has failed to state a claim for assault. The court will address each argument in turn.

First, for Counts I and II, defendants claim that plaintiff has failed to allege an adverse employment action. The Illinois Whistleblower Act was created "to protect employees from adverse employment actions in retaliation for reporting or refusing to engage in unlawful conduct by their employers." Huang v. Fluidmesh Networks, LLC, 2017 WL 3034672, at *3 (N.D. Ill. July 18, 2017). For both the Illinois Whistleblower Act and First Amendment retaliation claims, "the employer's retaliation must constitute a materially adverse employment action…." Harris v. City of Chi., 479 F.Supp.3d 743, 750-51 (N.D. Ill. 2020).

5

A materially adverse employment action "must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." Lewis v. City of Chi., 496 F.3d 645, 655 (7th Cir. 2007). Materially adverse employment actions fall into three categories: those that affect "(1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes to the employee's work conditions including subjecting her to humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in her workplace environment." Id. at 653; see also, Harris, 479 F.Supp.3d at 751.

Plaintiff has alleged that after he reported the events of February 28, 2021, he was placed on administrative leave, removed from the supervisor email thread despite being a supervisor, and demoted from commander to sergeant. He also alleges that Penze made a "veiled threat" of termination against plaintiff when plaintiff first reported the issue. Plaintiff further alleges that the defendants' actions resulted in constructive discharge. Plaintiff has clearly alleged an adverse employment action. Indeed, disciplinary actions such administrative leave and demotions are quintessential adverse employment actions. Although plaintiff could have provided more factual allegations regarding how his administrative leave and demotion impacted his benefits, responsibilities, and salary, plaintiff has alleged enough to overcome defendants' motion.

Defendants argue that plaintiff has pled himself out of court because the complaint states that plaintiff was placed on administrative leave for failing to reveal his source to Romano and Tigera. Defendants claim that because plaintiff provided a reasonable explanation for the

6

employment action, that it cannot be an adverse employment action. However, defendants' arguments go to causation, as opposed to whether a particular action is an adverse employment action, and are better suited for summary judgment, when the court will have the benefit of a developed factual record. Further, it is clear that plaintiff was merely identifying defendants' proffered reason for the administrative leave, which he appears to question as a legitimate reason. Although the complaint could be clearer on the subject, plaintiff has plausibly alleged that he suffered an adverse employment action for purposes of a Rule 12(b)(6) motion.

Defendants next move to dismiss plaintiff's § 1983 First Amendment retaliation claim, arguing that plaintiff has failed to sufficiently allege individual involvement in the claimed constitutional violation. To be held liable under § 1983, a defendant must have personally caused or participated in a constitutional violation. Kuhn v. Goodlow, 678 F.3d 552, 555-56 (7th Cir. 2012); see also, Rascon v. Hardiman, 803 F.2d 269, 273 (7th Cir. 1986). A plaintiff's allegations should "adequately connect specific defendants to illegal acts." Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009).

Relying on Harris v. City of Chicago, 479 F.Supp.3d 743 (N.D. Ill. August 18, 2020), defendants argue that Count II should be dismissed because plaintiff has not connected any of the individuals to the alleged conduct. Harris similarly involved a plaintiff police officer bringing a First Amendment retaliation claim. But unlike the complaint here, the complaint in Harris did not include any factual allegations regarding the individual defendants. Id. at 749 ("nowhere in his Complaint does [plaintiff] reference any particular act by any Defendant").

Here, in contrast, plaintiff's complaint identifies relevant actions taken by each individual defendant. Plaintiff alleges that Tigera directed the outside law firm to investigate plaintiff and

7

compromised the investigation's integrity when he directed the law firm not to speak with plaintiff. Romano discussed the body camera retention policy with plaintiff, received plaintiff's report regarding the February 28, 2021, incident, pressured plaintiff to reveal his source, and played a role in placing plaintiff on leave. Plaintiff further alleges that Penze met with plaintiff, threatened plaintiff with termination similar to another police officer, and played a role in placing plaintiff on leave. Skeffington-Voss attended the meetings with Romano and Tigera on March 31, and April 1, 2021, defied the Mayor's order to place Tigera on administrative leave, agreed with Tigera to keep plaintiff on administrative leave, and cut plaintiff's access to his NPD email. And Alpogianis, the new Mayor of Niles, allegedly directed the outside law firm to investigate plaintiff and to not speak with plaintiff. "This level of specificity is permissible at the motion to dismiss stage." Gregory v. Pfister, 2019 WL 3287873, at *4 (N.D. Ill. July 22, 2019) (denying motion to dismiss § 1983 claim because plaintiff's short allegations sufficiently alleged individual involvement). Consequently, the court declines to dismiss Count II on this basis.

      Finally, defendants move to dismiss Count III, claiming that plaintiff has not plausibly alleged an assault claim because Zielinski's phone call threat was not sufficiently imminent. The court agrees. Under Illinois law, a person commits assault when he engages in conduct that places another person in "reasonable apprehension of an imminent battery." Censke v. United States, 27 F.Supp.3d 920, 932 (N.D. Ill. 2014); see also, Kijonka v. Seitzinger, 363 F.3d 645, 647 (7th Cir. 2004). "Reasonable apprehension" means "a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." Censke, 27

F.Supp.3d at 932. "A merely verbal threat of indefinite action in the indefinite future is not an assault." Kijonka, 363 F.3d at 647.

Plaintiff alleges that on April 5, 2021, Zielinski called plaintiff and threatened to kill plaintiff if he disclosed Zielinski's identity to NPD. Because plaintiff has failed to plausibly allege that the threat was sufficiently imminent, plaintiff has failed to plausibly allege an assault claim. See e.g., Blanco v. Farley, 2011 WL 289435, at *2 (N.D. Ill. Jan. 27, 2011) (threatening phone call and voice message not sufficiently imminent to constitute assault). Consequently, Count III is dismissed.

## CONCLUSION

For these reasons, defendants' motion to dismiss (Doc. 18) is granted in part and denied in part. The court dismisses Count III and Robert Zielinski from the suit. Defendants are directed to answer the complaint on or before April 14, 2022. The parties are directed to file a joint status report using this court's form on or before April 21, 2022. The court will set a status hearing after receipt of the joint status report.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:    March 17, 2022**